UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FERDANINDO BOSCO, et al., | Civil Action No. |
| Plaintiffs, | 22-cv-06909 (JXN) (JRA) |
| v. | |
| COMPASS GROUP USA, INC., et al., | **REPORT AND RECOMMENDATION** |
| Defendants. | |

**José R. Almonte, U.S.M.J.**

Plaintiffs Ferdanindo Bosco and Claudette Jackson-Goodman, individually, and on behalf of all others similarly situated (collectively, "Plaintiffs"), initially moved to remand this action to the Superior Court of New Jersey ("State Court"), (the "Motion"). ECF Nos. 19, 20. Plaintiffs, however, subsequently withdrew the Motion once briefing was complete and "agree[d] to submit themselves to this Court's jurisdiction." ECF No. 36. "One of the most basic principles of our jurisprudence is that subject-matter jurisdiction cannot be conferred upon a court by consent of the parties." *Gosa v. Mayden*, 413 U.S. 665, 707 (1973); *see also Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 346–47 (3d Cir. 2003) (explaining that "it is well-settled that a party can never waive lack of subject matter jurisdiction"). The Court has an independent obligation to determine whether it has subject matter jurisdiction over this litigation. *See Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir. 2003). Thus, Plaintiffs' withdrawal of the Motion does not end the Court's analysis. The Court, therefore, must decide whether it has subject matter jurisdiction under the

Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453, 1711-15 ("CAFA"), although that was not the initial basis for removal to this Court. For the reasons discussed below, this Court respectfully recommends that the District Court affirm that subject matter jurisdiction exists.

## I. BACKGROUND AND PROCEDURAL HISTORY[1]

Defendants Compass Group USA, Inc., Compass One, LLC, and Compass 2K12 Services, LLC (collectively, "Defendants") are one of the "largest contract foodservice companies in the world." Am. Compl. ¶¶ 25-26, ECF No. 1. On September 26, 2022, Plaintiffs initiated this action in State Court against Defendants, seeking to recover unpaid wages on behalf of themselves and a putative class of individuals who worked in New Jersey. *See generally* Am. Compl.

On November 30, 2022, Defendants removed this action to federal court asserting general diversity jurisdiction under 28 U.S.C. § 1332(a). Notice of Removal ¶¶ 5, 7, ECF No. 1. On February 13, 2023, Plaintiffs filed the Motion to remand this case back to State Court. ECF Nos. 19, 20. After the Motion was fully briefed, the parties filed a letter with this Court stating: "Plaintiffs have agreed to withdraw their motion for remand in the case and agree to submit themselves to this Court's jurisdiction." ECF No. 36.

Despite Plaintiffs' willingness to submit to this Court's jurisdiction, this Court maintains an independent obligation to assure itself of subject matter jurisdiction. *See Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016). Therefore,

---

[1] The Court recites only the facts and procedural history relevant to resolution of this Motion.

pursuant to the Court's "bedrock obligation to examine . . . subject matter jurisdiction," this Court *sua sponte* asked Defendants to set forth how they believed the amount in controversy is satisfied for purposes of diversity jurisdiction. *Id.* (quoting *Pub. Int. Rsch. Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997)); *see* ECF No. 38.

On August 15, 2023, Defendants filed the requested letter. ECF No. 41. For the first time, Defendants raised CAFA (Section 1332(d)) as the basis for subject matter jurisdiction, and they remained silent as to the amount in controversy related to general diversity jurisdiction (Section 1332(a)), the initial basis for removal. *Id.* Defendants calculated the amount in controversy to be in excess of $5 million, as required by CAFA, based on a review and analysis of their own records that revealed over 500 class members, as well as Plaintiffs' representation in a prior submission that the amount in controversy ranged from approximately $1,300 to $5,000 per class member. *Id.* at 3-4. Although the Court provided Plaintiffs the express opportunity to submit their own amount in controversy calculation, no such filing was made. *See* ECF No. 38. Plaintiffs have not otherwise objected to Defendants' August 15, 2023 letter or the assertion of CAFA jurisdiction made therein.

## II.   LEGAL STANDARD

Generally, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant[.]" 28 U.S.C. § 1441(a). Once an action is removed, a plaintiff may challenge removal by moving to remand the case back to state court for, among other things, lack of subject

matter jurisdiction. *See* 28 U.S.C. § 1447(c). Even when subject matter jurisdiction is not challenged, the Court possesses an independent obligation to ensure that it has jurisdiction over its matters. *See, e.g.*, *Martin v. Wal-Mart Stores, Inc.*, 709 F. Supp. 2d 345, 350 (D.N.J. 2010) (conducting a *sua sponte* analysis of subject matter jurisdiction following removal); *see also Coffey v. Wells Fargo Bank N.A.*, No. 20-cv-5093, 2020 WL 7239844, at *2 (D.N.J. Dec. 9, 2020) (same).

When plaintiffs file a class action lawsuit, federal district courts have two alternative routes to maintain jurisdiction over the matter. Under Section 1332(a), "[f]ederal district courts have original jurisdiction on the basis of diversity of citizenship where, (1) the matter in controversy exceeds the sum or value of $75,000, and (2) there is diversity of citizenship between each plaintiff and each defendant in the case." *Sacchi v. ABC Fin. Servs., Inc.*, No. 14-cv-1196, 2014 WL 4095009, at *2 (D.N.J. Aug. 18, 2014) (citing *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 148 (3d Cir. 2009)).

Alternatively, pursuant to CAFA, Section 1332(d) vests district courts with original jurisdiction over class actions where:

> (1) the matter in controversy (*i.e.*, the aggregated claims of the individual class members) exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) there is minimal diversity (*i.e.*, any member of a class of plaintiffs is a citizen of a state different from any defendant), and (3) the class has at least 100 members.

*Wilkins v. Navy Fed. Credit Union*, No. 22-cv-2916, 2023 WL 239976, at *4 (D.N.J. Jan. 18, 2023) (citations omitted). The differences between Section 1332(a) and Section 1332(d) are significant. A removing party who establishes jurisdiction under

4

one section may not necessarily succeed under the other section. *See, e.g., Shah v. Hyatt Corp.*, 425 F. App'x 121, 123 (3d Cir. 2011).

### III. DISCUSSION

Defendants initially removed this case under the general diversity jurisdiction provision, Section 1332(a). *See generally* Notice of Removal. But then, after several exchanges between the parties and the Court, it appears that both parties have abandoned their arguments related to Section 1332(a). *See* ECF Nos. 36, 41. Defendants now assert that this Court has jurisdiction pursuant to CAFA, and Plaintiffs filed no opposition to Defendants' arguments. ECF No. 41. This Court will therefore analyze whether it has subject matter jurisdiction under Section 1332(d), that is, under CAFA.

#### A. Timeliness of CAFA Assertion

The removal statute sets deadlines by which defendants may remove a case to federal court. One provision, 28 U.S.C. § 1446(b)(1), requires removal within thirty days of service of a pleading that demonstrates the existence of federal jurisdiction. *McLaren v. UPS Store Inc.*, 32 F.4th 232, 234 (3d Cir. 2022). If the pleading does not disclose the existence of federal jurisdiction, a separate provision, 28 U.S.C. § 1446(b)(3), permits removal within thirty days of the date on which a defendant receives an amended pleading, motion, order, or other paper that discloses the basis for federal jurisdiction. *Id.* Thus, "the thirty-day clocks are triggered by either the four corners of the initial complaint or documents a defendant *receives*, and not by

what the defendant subjectively knew or the documents in its possession." *Id.* at 241 (emphasis added).

Here, although the Amended Complaint reveals facts satisfying CAFA's diversity requirement, Notice of Removal ¶ 6, it does not reveal facts satisfying CAFA's numerosity requirement. Nor does the Amended Complaint provide "a clear statement of the damages sought or . . . sufficient facts from which damages can be readily calculated[.]" *McLaren*, 32 F.4th at 237 (quoting *Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 69 (1st Cir. 2014)). As to numerosity, the Amended Complaint defines its class as "hourly wage employees of [Defendants] who were deprived wages for employment that took place in the State of New Jersey since at least 2009 and into the present." Am. Compl. ¶ 48. The Amended Complaint does not estimate or calculate the potential size of this class. As to the amount in controversy, the Amended Complaint specifically alleges that "the amount in controversy is less than five million dollars[.]" Am. Compl. ¶ 10. Although the Amended Complaint alleges that Defendants failed to properly pay their hourly-wage employees as promised, Am. Compl. ¶ 2, it fails to allege any quantity of unpaid hours or employee payrate, let alone the alleged loss per plaintiff. Because the Amended Complaint reveals neither a basis from which to calculate individual damages nor the number of workers allegedly effected, it does not inform Defendants "to a substantial degree of specificity" that the amount in controversy exceeds $5 million. *See McLaren*, 32 F.4th at 236. In fact, the Amended Complaint explicitly states that the amount in controversy is *less than* $5 million. Am. Compl. ¶ 10. Therefore, the four corners of

the Amended Complaint did not trigger the thirty-day removal clock per Section 1446(b)(1).

It was not until March 27, 2023, that Plaintiffs informed Defendants, via reply brief, that the amount in controversy ranged from $1,300 to $5,000 per class member. ECF No. 31 at 6. In other words, March 27, 2023 was the first time that Defendants "received" a statement from Plaintiffs regarding the alleged damages per class member. But that information was insufficient because Defendants still needed to know the potential size of the class to ascertain the total amount in controversy. That information came to light only after Defendants searched their own records and determined that the potential class size is comprised of over 500 individuals. *See* ECF No. 41 at 4. Because Defendants' review of their own records does not trigger the thirty-day removal clock under Section 1446(b)(3), the Court finds that Defendants were timely in invoking CAFA jurisdiction. *See McLaren*, 32 F.4th at 241 (holding that a spreadsheet produced by defendants was not the type of document that started the Section 1446(b)(3) clock because it was not "received" by defendants). Although Defendants did not file a formal Amended Notice of Removal, their letter dated August 15, 2023, serves the same purpose. *See* ECF No. 41. Rather than elevate form over substance, this Court construes Defendants' letter as an Amended Notice of Removal. *See USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 205-06 n.13 (3d

Cir. 2003) (During "the 30–day period within which an action may be removed under 28 U.S.C. § 1446(b) . . . a removal notice may be amended freely." (citation omitted)).[2]

## B. CAFA Jurisdiction

Having found that Defendants were timely in raising CAFA as a basis for jurisdiction, this Court must still decide whether it in fact has jurisdiction. After examining each jurisdictional element of CAFA, this Court is satisfied that it has subject matter jurisdiction over this case.

### 1. *Minimal Diversity*

CAFA's minimal diversity requirement necessitates that at least one member of the plaintiffs' class be diverse from any defendant. 28 U.S.C. § 1332(d)(2)(A). Plaintiffs bring this case on behalf of a class of individuals who worked in New Jersey—citizens and non-citizens alike. Am. Compl. ¶¶ 3-4, 48, 51. Defendants, on the other hand, are citizens of Delaware and North Carolina. Am. Compl. ¶¶ 5-7. Plaintiffs do not challenge the assertion of minimal diversity in the context of CAFA. Because it is evident from the face of the Amended Complaint that (1) the proposed class encompasses New Jersey citizens, and (2) Defendants are citizens of Delaware and North Carolina, the Court is satisfied that minimal diversity exists.

---

[2] The Court is mindful that adding new jurisdictional grounds following removal can be a procedural bar resulting in remand. *See PMC, Inc. v. Tomco Constr., Inc.*, No. 21-cv-13470, 2021 WL 5413988, at *4 (D.N.J. Nov. 18, 2021). However, that applies in circumstances where the thirty-day period has lapsed, which is not the situation here. *See id.* at *3 ("A party may freely amend the notice of removal within the thirty-day period provided by § 1446(b) to remove an action." (quoting *Pickett v. Marriott Int'l, Inc.*, No. 13-cv-6556, 2014 WL 2436191, at *2 (D.N.J. Mar. 24, 2014))).

*2. Numerosity*

CAFA jurisdiction is limited to cases where the proposed class has more than 100 members. 28 U.S.C. § 1332(d)(5)(B). Defendants state, and Plaintiffs do not challenge, that Defendants can now determine that there are "well over 500" class members after reviewing their own records. ECF No. 41 at 4. The Court is satisfied that numerosity exists.

*3. Amount in Controversy*

Courts in the Third Circuit have historically employed three tests in determining whether the amount in controversy is satisfied for purposes of CAFA. *See Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 504–06 (3d Cir. 2014). The first test (the "*McNutt/Samuel-Bassett* framework") applies where the parties challenge the jurisdictional facts. *Id.* at 504 (citing *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 398 (3d Cir. 2004); *McNutt v. Gen. Motors Acceptance Corp. of Indiana, Inc.*, 298 U.S. 178, 179-80 (1936)). In such an instance, the party asserting that subject matter jurisdiction exists must "justify his allegations by a preponderance of the evidence." *Judon*, 773 F.3d at 504 (quoting *McNutt*, 298 U.S. at 189).

The second test (the "*Red Cab/Samuel-Bassett* framework") "applies where the jurisdictional facts are not contested and the amount in controversy is 'determined in whole or in part' by applicable law." *Id.* at 505 (quoting *Samuel-Bassett*, 357 F.3d at 397–98). Where the *Red Cab/Samuel-Bassett* framework controls, "the *challenger* to subject matter jurisdiction [must] prove, to a legal certainty, that the amount in

9

controversy *could not exceed* the statutory threshold." *Frederico v. Home Depot*, 507 F.3d 188, 195 (3d Cir. 2007) (emphasis in original).

The third test (the "*Morgan* legal certainty test") applies "where a plaintiff expressly limits the amount in controversy below the $5,000,000 jurisdictional threshold" in an attempt to avoid federal court jurisdiction. *Judon*, 773 F.3d at 504 n.8. Where a complaint contains such a limitation, a defendant who removed the case bears the burden of proving "to a legal certainty that the complaint exceeds the statutory amount in controversy requirement." *Id.* (quoting *Morgan v. Gay*, 471 F.3d 469, 475 (3d Cir. 2006)).

Thus, both *Red Cab* and *Morgan* have a "legal certainty" test. As the District Court in *Wilkins* aptly summarized, "[i]n sum, the *Morgan* legal certain test requires the party *asserting* jurisdiction to prove to a legal certainty the amount in controversy is met . . . whereas the *Red Cab* legal certainty test requires the party *challenging* jurisdiction to prove to a legal certainty that it could not recover the amount in controversy[.]" 2023 WL 239976, at *5 (emphasis in original) (citing *Judon*, 773 F.3d at 503–04).

Recently, however, there have been diverging views among the district courts within the Third Circuit regarding the applicable standard for determining whether the amount in controversy threshold has been satisfied. More specifically, Courts in this district have disagreed about the impact of *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014), on *Judon*, 773 F.3d 495,[3] and the applicability of

---

[3] *Judon*, 773 F.3d 495, was decided by the Third Circuit on December 12, 2014, just three days before the Supreme Court decided *Dart*, 574 U.S. 81, on December 15, 2014.

the legal certainty test to post-removal challenges to the amount in controversy. *Compare La Stella v. Aquion, Inc.*, No. 19-cv-10082, 2020 WL 7694009, at *5 (D.N.J. Dec. 28, 2020) ("*Dart* clearly calls into question the soundness of the reasoning for applying the legal certainty test rather than the preponderance of the evidence test, as well as *Judon's* standards for post-removal challenges to the amount in controversy. Rather, the preponderance of the evidence standard applies whenever a plaintiff disputes jurisdiction." (citations and quotation omitted)), *with Wilkins*, 2023 WL 239976, at *7 (holding that the *Red Cab/Samuel-Bassett* framework applied in post-removal challenge to amount in controversy and the Court "remains bound by controlling Third Circuit precedent—*Judon* and *Frederico*—until those cases are squarely overruled by the Third Circuit or the Supreme Court.").

To complicate matters, here, the Court is presented with unique circumstances because Plaintiffs initially filed the Motion but then withdrew it, leaving it to the Court to determine subject matter jurisdiction *sua sponte*. And although the Amended Complaint expressly limits the amount in controversy to below $5 million, Plaintiffs later provided a calculation of $1,300 to $5,000 as the potential amount in controversy per class member. ECF No. 31 at 6. "[W]hen a court raises its subject-matter jurisdiction *sua sponte* and the non-removing party does not assume the burdens of challenging jurisdiction as it did in *Frederico*, the *Red Cab/Samuel-Bassett* framework does not control the parties' burdens or the court's inquiry." *Martin*, 709 F. Supp. 2d at 348-49. Put another way, "[a]lthough *Samuel-Bassett* shifts the burden from the proponent of federal jurisdiction to its

11

challenger, . . . *Samuel-Bassett* does not transfer that burden to the inquiring court." *Id.* at 349. Rather, "where allegations are not challenged by the adversary, 'the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of the evidence.'" *Frederico*, 507 F.3d at 198 (quoting *McNutt*, 298 U.S. at 189).

This Court need not weigh in on the debate regarding the applicable standard because regardless of which test the Court applies, the result is the same. Even applying the heightened "legal certainty" tests under both *Morgan* and the *Red Cab/Samuel-Bassett* framework leads this Court to find that the amount in controversy requirement is satisfied.

Defendants base their CAFA amount in controversy calculation on allegations made by Plaintiffs in the Amended Complaint and their reply in support of the Motion. ECF No. 41 at 3-4. Plaintiffs' reply calculates individual compensatory damages to be approximately $1,300 and "definitely less than $5,000." ECF No. 31 at 6. Defendants, starting with this $1,300 compensatory damage figure, calculate potential punitive damages by multiplying compensatory damages by five. ECF No. 41 at 3-4; *see also Frederico*, 507 F.3d at 198-99 (calculating punitive damages by applying a five-times multiplier to compensatory damages, as permitted under New Jersey law (citing N.J. STAT. ANN. § 2A:15-5.14(b)). This yields $6,500 in punitive damages per class member. ECF No. 41 at 4. Adding $1,300 in compensatory damages to $6,500 in punitive damages yields $7,800 in total damages per class

12

member, before considering attorneys' fees. *Id.* Defendants calculate potential attorneys' fees by applying the thirty percent damages principle, which yields $2,340 in attorneys' fees per plaintiff. *Id.*;[4] *see also Frederico*, 507 F.3d at 199 (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 303 (3d Cir. 2005)) (calculating attorneys' fees as thirty percent of the judgment). Adding $2,340 in attorneys' fees to $7,800 in total damages yields an amount in controversy of $10,140 per class member. Multiplying this by 500 class members yields an amount in controversy of over $5 million, even when taking the lowest compensatory damages across the minimum number of potential class members. *C.f. Frederico*, 507 F.3d at 198-99 (dividing $5 million, the jurisdictional threshold, by the amount in controversy per class member to determine the requisite class size for CAFA jurisdiction).

Plaintiffs passed on the opportunity to challenge this calculation or provide their own calculation. Because the Court is satisfied that the amount in controversy exceeds the $5 million threshold by a "legal certainty," it also concludes that that amount is satisfied by the preponderance of the evidence. In sum, subject matter jurisdiction exists under CAFA regardless of which test applies.

---

[4] Defendants state that their attorneys' fees calculation is based on the thirty percent of damages principle while also claiming that, based on $7,800 in total damages per plaintiff, "each plaintiff in this action would incur an expense of $5,460 in fees." ECF No. 41 at 4. The Court disagrees with Defendants' math, and therefore relies on its own calculation.

### IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion (ECF No. 19) is deemed **WITHDRAWN**. Further, this Court respectfully recommends that the District Court affirm that subject matter jurisdiction exists in this matter. The parties have fourteen days to file and serve objections to this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(C); L.Civ.R. 72.1(c)(2).

HON. JOSE R. ALMONTE
UNITED STATES MAGISTRATE JUDGE

Dated: September 21, 2023